## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:15-CR-155 |
| v. | (MARIANI, J.)<br>(SAPORITO, M.J.) |
| DENNIS LANGLEY, JR., | |
| Defendant. | |

## MEMORANDUM

This matter is before the court on the motion for release pending sentencing (Doc. 97) filed by the defendant, Dennis Langley, Jr.

Langley, who is currently awaiting sentencing, seeks his release from custody pending sentencing based on prison conditions at the Lackawanna County Prison (LCP) and the inherent risk posed by his being confined in close quarters to a large number of other inmates during the COVID-19 global pandemic. In his motion, Langley has certified that the assigned assistant United States attorney does not concur in his motion. (Doc. 97-1). Defense counsel filed a notice indicating that the parties have been unable to resolve the motion. (Doc. 100). Langley filed a brief in support of his motion (Doc. 98) and the

government filed a brief in opposition to the defendant's motion. (Doc. 102). The matter is ripe for a decision.

## I.   *Statement of Facts*

A federal grand jury indicted Langley on July 28, 2015, charging him with one count of possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On June 15, 2016, he appeared before the undersigned United States magistrate judge for an initial appearance and arraignment where he pled not guilty to the charge. At that time, we scheduled a detention hearing for June 17, 2016. The detention hearing was subsequently continued and held on June 21, 2016. At that hearing, we determined that Langley had failed to present sufficient evidence to rebut the presumption pursuant to 18 U.S.C. § 3142(e)(3). We determined that Langley should be detained because there was clear and convincing evidence that "no condition or combination of conditions of release would reasonably assure the safety of any other person and the community." (Doc. 21). He has remained detained since that time at LCP.

On June 15, 2018, Langley pleaded guilty to Count 1 of the Indictment—possession with intent to distribute a controlled substance,

heroin, a Schedule I controlled substance in violation of 21 U.S.C. § 841(a)(1)—pursuant to a written plea agreement. (Doc. 54). For this offense, Langley faces a maximum term of life imprisonment, a mandatory minimum term of 10 years, a maximum fine of $8,000,000, a term of supervised release of 8 years to life, plus payment of the costs of prosecution.

The presentence report has been completed and disclosed to the parties. The docket reflects that character letters as to Langley have been docketed under seal and defense counsel has filed a sentencing memorandum. (Doc. 86; Doc. 103). In his brief, Langley seeks release because of the existence of COVID-19 and the alleged adverse conditions of LCP. (Doc. 98). He also contends that we should reopen the detention hearing and release him, if only temporarily, due to the health risks associated with his being confined with a large group in close quarters during the COVID-19 global pandemic. In addition, Langley argues that temporary release is warranted to protect his Eighth Amendment rights. The government contends that Langley's motion fails to prove "exceptional reasons" to justify a temporary release. For the reasons discussed herein, we will deny Langley's motion.

## II.    Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[1] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through June 4, 2020, for the majority of Pennsylvania counties—including Lackawanna County, where the defendant is detained at LCP. Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash or sanitize frequently, and to avoid close contact with others—all of which present challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v.*

---

[1] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

*Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### b. Conditions of LCP

Langley states in in his brief that he is housed in a two-person cell, and that he is permitted to come out for telephone calls for a half an hour, usually twice per day. Hand soap is bought weekly; he has a working sink, but no cleaner; his block needed to use a hunger strike to get more tissues; he cannot retain cleaning supplies in his cell; the telephones are not cleaned between uses; and contact with counselors, medical staff, and corrections officers still occurs. (Doc. 98, at 3-4).

The government proffered in its brief that LCP has reported no positive COVID-19 cases among its inmate populations and only one corrections officer has tested positive. All inmates were informed and placed on lockdown. We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from

volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c.  18 U.S.C. § 3145(c)—Release Pending Sentencing

Langley seeks release under 18 U.S.C. § 3145(c), contending that he should be released because of the COVID-19 global pandemic, and that he is not likely to flee or pose a danger to the safety of any other person or the community if released.

Because Langley has pleaded guilty to a serious drug offense, *see* 18 U.S.C. § 3142(f)(1)(C), his detention in the first instance is governed by 18 U.S.C. § 3143(a)(2), which provides that such a pre-sentence defendant be detained unless:

> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and
>
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2); *see also* Fed. R. Crim. P. 46(c) (placing burden of proof on the defendant).

Langley has proffered no evidence to support a finding that there is a substantial likelihood that motion for acquittal or new trial will be granted—indeed, he has pleaded guilty to a serious drug trafficking offense. *See United States v. Leathers*, No. 2:19-cr-633 (WJM), 2020 WL 2219853, at *2 (D.N.J. May 7, 2020) ("Because Defendant pleaded guilty, there is no likelihood—much less a substantial likelihood—that a motion for acquittal or a new trial will be granted."). Likewise, Langley has proffered no evidence that the government will be recommending no

prison time, and in its brief in opposition, the government advises that it plans to recommend that a sentence of imprisonment be imposed. (Doc. 102, at 14). Moreover, Langley faces a mandatory minimum 10-year prison sentence due to his criminal history. (*Id*. at 13). Consequently, Langley is not eligible for release under § 3143(a)(2).

Instead, Langley relies on § 3145(c), which provides that: "A person subject to detention pursuant to section 3143(a)(2) . . . , who meets the conditions of release set forth in section 3143(a)(1) . . . , may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c); *see also United States v. Williams*, 903 F. Supp. 2d 292, 298–302 (M.D. Pa. 2012) (holding that a district court possesses discretion to consider a temporary release pending sentencing under § 3145(c)); *United States v. Ortiz*, No. 1:18-CR-00134, 2020 WL 1904478, at *3 (M.D. Pa. Apr. 17, 2020) (endorsing *Williams* in the context of COVID-19).

To qualify for temporary release pending sentencing under § 3145(c), a defendant must first satisfy the criteria set forth in § 3143(a)(1). That section provides that the person "be detained, unless

the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1); *see also* Fed. R. Crim. P. 46(c) (placing burden of proof on the defendant).

We originally ordered the defendant's detention on June 21, 2016, based on findings that the defendant had failed to present sufficient evidence to rebut the presumption in favor of detention under 18 U.S.C. § 3142(e)(3) arising from the maximum penalties associated with the charged offenses. (Doc. 21.) Specifically, we ordered the defendant detained pending trial because the court found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person and the community. (*Id.*) In addition to the statutory presumption, we considered the nature and circumstances of the charged offense, the weight of the evidence against the defendant, and the defendant's history and characteristics. (*Id.*)

We note that, having pleaded guilty in the interim, the burden of proof has now shifted from the government to the defendant. *Compare* 18 U.S.C. § 3142(f) (imposing burden on government to prove dangerousness by clear and convincing evidence and flight risk by preponderance of the

evidence) *with id.* § 3143(a)(1) *and* Fed. R. Crim. P. 46(c) (imposing burden on defendant to prove by clear and convincing evidence that he is not likely to flee or to pose a danger to other persons or the community). Now, after considering the information presented in the motion papers and based on the nature of the offense of conviction, the length of the potential sentence to be imposed, the strong weight of evidence against the defendant, and the defendant's history and characteristics, we find that the defendant has failed to establish, by clear and convincing evidence, that there is any condition or combination of conditions that will reasonably assure the court that he is not likely to flee or pose a danger to the safety of any other person or the community if released.

Based on the foregoing, we are not obligated to address the "exceptional reasons" factor in § 3145(c). *See Ortiz*, 2020 WL 1904478, at *5. Nevertheless, under the specific facts presented in this case, we find the health risks posed by the COVID-19 pandemic to this particular defendant do not constitute "exceptional reasons" justifying his temporary release from presentence detention.

In his supporting brief, Langley presents only speculative arguments that his confinement in the LCP increases the health risks

posed to him by COVID-19. His brief includes a passing reference to his "age and condition," but his age poses no special concern—he is 33 years old—and it does not articulate any underlying health condition that might subject him to increased health risks if exposed to COVID-19.[2] Other than a single guard who appears to have had no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all live, in-court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Any reason for Langley to assist his counsel in his defense is further diminished by the fact that the presentence report in this case has already been completed and apparently reviewed by counsel, and he is merely awaiting the scheduling of sentencing. Further, we are confident that LCP will respect the privileged nature of the communications between attorneys and their

---

[2] In its opposition brief, the government notes that Langley recently reported "good health" when interviewed by a federal probation officer for his presentence report. (Doc. 102, at 24.)

inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention.

In his brief, Langley states that, if released, he will live with his mother at her house, in the same room he occupied before his arrest in this case, and his mother would serve as his third-party custodian. We have no reason to doubt the good intentions of Langley's mother to act as his third-party custodian. Nevertheless, we are not inclined to release him under these circumstances, while he awaits sentencing.

In the absence of any evidence of a medically diagnosed health condition that would increase the risk to Langley posed by COVID-19, or any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that Langley should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). While the court remains sympathetic to Langley's subjective concerns regarding the possibility of health complications

caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis*, No. 19-1604, 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr.

2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Langley's continued incarceration would likely increase his risk of harm.

### d. Eighth Amendment Rights

The defendant contends that his continued confinement during the potential exposure to COVID-19 constitutes a violation of the Eighth Amendment prohibition of cruel and unusual punishment. (Doc. 98, at 11–13). Langley relies upon *Helling v. McKinney*, 509 U.S. 25, 28 (1993), a federal civil rights action where a non-smoking inmate was assigned to

14

a cell with a smoker, and despite that he had not yet suffered harm, the
Supreme Court held that he had stated a cause of action under the Eighth
Amendment because his exposure to tobacco smoke posed an
unreasonable risk of serious damage to his future health. In response,
the government argues that Langley, a pretrial detainee, cannot
challenge his custody or the conditions of his confinement under the
Eighth Amendment. (Doc. 103, at 40 (citing *Hubbard v. Taylor*, 399 F.3d
150, 164, 166 (3d Cir. 2005), *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), and
*Kost v. Kozakiewicz*, 1 F.3d 179, 188 (3d Cir. 1993)).) The government is
correct that the Eighth Amendment is inapposite here, but the substance
of this argument by the defendant properly sounds in the Fifth
Amendment's due process clause and should be considered on its merits.
*See Putman v. Gerloff*, 701 F.2d 63, 64 & n.2 (8th Cir. 1983) (treating
counseled pretrial detainee's Eighth Amendment claim as a due process
claim instead).

A federal pretrial detainee's constitutional rights flow from the due
process clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535
(1979); *United States v. Cook*, No. 3:16-CR-00312, 2020 WL 1939612, at
*5 (M.D. Pa. Apr. 22, 2020). "Under *Bell*, a 'particular measure amounts

to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012). "Absent a showing of an expressed intent to punish on the part of the detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 538–39; *Cook*, 2020 WL 1939612, at *5. Moreover, we note that several federal district courts have recently rejected similar Fifth Amendment challenges to pre-trial or pre-sentencing detention based on COVID-19. *See United States v. Stevens*, No. 19-350-02, 2020 WL 1888968, at *5 (E.D. Pa. Apr. 16, 2020) (collecting cases).

Like the defendant in *Cook*, Langley does not make a forceful claim that his due process rights have been violated. He has not been able to demonstrate that that LCP is unable or unwilling to take the necessary precautions to prevent or limit the spread of COVID-19 within the prison. Rather, the evidence shows that LCP is implementing the procedures

recommended by the CDC, and thus far, those measures have been successful in mitigating and controlling the spread of the virus.

However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it becomes clear that there are compelling reasons to justify the defendant's release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020)).

### III.   Conclusion

For the reasons set forth above, Langley has failed to establish by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released, and he has failed to establish exceptional reasons why his continued detention until sentencing is not appropriate. Therefore, his motion (Doc. 97) is denied.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 21, 2020